NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DEONDRIA SHAWNQUIL CALBERT,
*Petitioner/Appellee,*

*v.*

XAVIER TYRELL PARSONS,
*Respondent/Appellant.*

No. 1 CA-CV 25-0378 FC

FILED 12-17-2025

Appeal from the Superior Court in Maricopa County
No. FC2025-091336, FC2025-091379
The Honorable Joanna Reihing, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Xavier Parsons, Mesa
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

**¶1** Xavier Parsons (Parsons) appeals from an order, entered after an evidentiary hearing, (1) upholding an order of protection entered against him in favor of Deondria Calbert (Calbert) and (2) denying Parson's petition seeking an order of protection against Calbert. Because Parsons has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2** Parsons and Calbert have one child together, A.B. (a pseudonym), who was born in January 2022. Parsons and Calbert are parties to a family court proceeding, filed in 2022. This appeal, however, arises out of their competing petitions seeking orders of protection.

**¶3** On March 27, 2025, Parsons petitioned for a protective order against Calbert. The court declined to issue an ex parte order and set an evidentiary hearing on Parsons' petition.

**¶4** On March 28, 2025, Calbert petitioned for a protective order against Parsons. Later that day, the court issued an ex parte order of protection prohibiting Parsons from having contact with Calbert or A.B. except through attorneys, legal process and court hearings. At Parsons' request, the court set an evidentiary hearing on Calbert's petition.

**¶5** The evidentiary hearings were held jointly on April 7, 2025, beginning at 10:00 a.m. As the hearing began, the court noted Parsons proposed calling six witnesses. The court told the parties that the hearing was set for 45 minutes, with 20 minutes per side. Parsons' attorney responded "[t]hat will not be sufficient time," adding the parties would "need, if not two hours, perhaps more." The court then expanded the time allocated to each side, stating, "I'm going to start with 30 minutes a party."

¶6          Calbert testified first, describing the basis for her petition and explaining why she sought an order of protection, including because she "found a tracker on [her] car" and that Parsons was "sending people" to harass and stalk her. Calbert then called her sister, who testified she feared for her family's safety because she had seen how Parsons had "been following [Calbert] around and [had] people from their circle follow [Calbert] around." The court later told Calbert she was "at 35 minutes" and her time was up, noting Parsons would also have 35 minutes to present his evidence.

¶7          Parsons' attorney cross-examined Calbert's sister. The attorney also cross-examined Calbert, focusing on her relationship with a previous romantic partner. The court eventually sustained relevancy objections to those questions, explaining that "it is completely irrelevant to me whether or not [Calbert] is speaking to" her previous partner. Parsons' attorney, however, continued to ask such questions, even after the court said he was "wasting time" in doing so. Eventually, Parsons' attorney asked Calbert about the tracking device and her stalking allegations.

¶8          Parsons' attorney then moved for a directed verdict on Calbert's petition, which the court denied. When Parsons' attorney called Parsons as a witness, the court said, "[y]ou have 12 minutes." When Parsons' attorney again objected to the time allotted, the court noted it was allocating equal time, adding "[y]ou should be able to prove acts of domestic violence in a 20-minute period. And I'm giving you 35."

¶9          Parsons then testified, including about concern for A.B.'s safety, denying that he put a tracker on Calbert's car and denying that he told anyone to follow Calbert. Parsons was asked about allegations of Calbert's abuse of A.B., and actions about Calbert's previous partner. Parsons' attorney then called Genna Jackson, Parsons' mother, and asked her questions about Calbert's previous partner and contact with A.B. The court then said, "[a]nd this is it, Counsel. We are officially out of time."

¶10          During the hearing, which ultimately lasted two hours, the court heard testimony from four witnesses and received more than 30 exhibits, including several videos played for the court. Having considered the conflicting evidence and ruling from the bench, the court first addressed Calbert's petition. The court found by the preponderance of the evidence that it was "clear that harassing behaviors are taking place," noting the videos "show stalking behaviors" by or on behalf of Parsons, adding, "I do believe that if I don't keep this order of protection in place, additional acts of domestic violence will occur." As a result, the court affirmed Calbert's

order of protection against Parsons, although removing A.B. as a protected person, and provided notice of "Brady" indicators prohibiting Parsons from purchasing or possessing firearms or ammunition. The court denied Parsons' petition, finding he failed to prove his case.

¶11 This court has jurisdiction over Parsons' timely appeals from the grant of Calbert's petition and the denial of Parsons' petition under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) and -2101(A)(1) (2025).[1]

## DISCUSSION

¶12 This court reviews an order of protection for an abuse of discretion, reviewing issues of law de novo. *Mahar v. Acuna*, 230 Ariz. 530, 534 ¶ 14 (App. 2012) (citing cases). A superior court abuses its discretion when the record is "devoid of competent evidence to support the decision." *Michaelson v. Garr*, 234 Ariz. 542, 544 ¶ 5 (App. 2014) (citation omitted). A court may issue a protective order if it determines there is reasonable cause to believe that the defendant may commit an act of domestic violence or has committed an act of domestic violence within the past year. *See* A.R.S. § 13-3602(E). The court may continue the order of protection after a hearing if the petitioner proves his or her case by a preponderance of the evidence. A.R.S. § 13-3602(L); Ariz. R. Prot. Order P. 38(g)(3).

¶13 Parsons' opening brief fails to comply with ARCAP 13. Among other things, Parsons failed to provide "citations of legal authorities and appropriate references to the portions of the record on which [he] relies." ARCAP 13(a)(2) & (7)(A). Such deficiencies typically constitute a waiver. *See, e.g.*, *Ramos v. Nichols*, 252 Ariz. 519, 523 ¶¶ 10-11 (App. 2022) (finding waiver where appellant "makes no attempt to refer to the record or explain his contentions with citation to legal authority based on the record"). Calbert, however, failed to file an answering brief, and the time to do so has passed. That failure could be construed as a confession of error. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994) (citing cases). Despite these failures by both parties, given the issues involved, this court will exercise its discretion and address the merits of Parsons' arguments.

---

[1] Absent material revisions after the relevant dates, statues and rules cited refer to the current version unless otherwise indicated.

I.  **Parsons Has Not Shown the Superior Court Abused Its Discretion in Upholding Calbert's Order of Protection and Denying His Petition for an Order of Protection.**

   A.  **Due Process.**

**¶14**        Parsons argues the superior court "refused to provide [him] the opportunity of due process under Arizona law." Parsons alleges he was "not allowed to present evidence" or "have witnesses that were present testify," "which were not only relevant to issues in both petitions, but would have clearly shown the allegations [Calbert] submitted were false." Parsons emphasizes that this failure was "not due to relevance or objection by [Calbert]. It was sole[l]y based on [the court] refusing to allow time." Parsons argues he was not "provided the opportunity to respond and present relevant evidence or have witnesses testify," and this denial was solely based on "the court's concern over time and not law or procedure."

**¶15**        Due process requires that Parsons be given notice that was "reasonably calculated to apprise him of the action in order to adequately prepare his opposition," *Savord v. Morton*, 235 Ariz. 256, 260 ¶ 16 (App. 2014) (citation omitted), and an "opportunity to be heard in a meaningful manner and at a meaningful time," *Ariz. Dep't of Transp. v. Ariz. Motor Vehicle, LLC*, 255 Ariz. 139, 142 ¶ 14 (App. 2023) (citation omitted). Here, Parsons was personally served with the notice of hearing for both his petition and Calbert's petition, before the April 7, 2025 hearing. The hearings were set at the same time, before the same judicial officer, and Parsons attended the hearing and was represented by counsel at the hearing. Although he objected to the time allocated to the hearing, Parsons was given advance reasonable notice that apprised him of the nature of the proceeding and had sufficient time to prepare for the hearing. *See Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (citing cases).

**¶16**        The superior court has substantial discretion to impose reasonable time limits for hearings. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 90-91 ¶ 29 (App. 1998) (citing cases). In contested order of protection proceedings, the court "must hold the [evidentiary] hearing at the earliest possible time." Ariz. R. Prot. Order P. 38(b). Where, as here, both parties filed petitions, the court properly can hold "a joint hearing on both cases." Ariz. R. Prot. Order P. 27(b)(2). The court "must ensure that both parties have an opportunity to be heard, to present evidence, and to call and examine and cross-examine witnesses." Ariz. R. Prot. Order P. 38(g)(1).

¶17        Here, the court held a joint hearing lasting two hours. When the court raised timing at the beginning of the hearing, the court stated that such hearings were normally completed with each side getting 20 minutes. The court then gave the parties 30 minutes, later extended to 35 minutes. During that time, counsel for Parsons repeatedly pursued lines of questioning that the court found "irrelevant" and were "wasting time." Given the allocation of time as the hearing began, the court extending the time allocated to Parsons, and Parsons using a significant amount of that allocated time to pursue irrelevant topics, he has shown no denial of his due process rights.

### B.        Sufficiency of the Evidence.

¶18        Parsons argues that Calbert's "petition contained false allegations that would have" undeniably "been proven false" had the court "not refused to provide [him] the opportunity to present evidence relevant to him contesting the order." Parsons also claims that Calbert "perjured herself," and "the court would have had sufficient evidence to deny her petition" if Parsons had been allowed to present "pertinent evidence." Parsons also alleges his position could have been corroborated by testimony from a private investigator who was present at the hearing.

¶19        Parsons made no proffer to the superior court about what other evidence would have shown. *Cf.* Ariz. R. Evid. 103(a)(2). And he has not cured that deficiency on appeal. Accordingly, there is nothing in the record supporting his arguments on appeal about what other evidence would have shown. To the extent that he asserts the superior court should have evaluated the evidence differently at the hearing, this court does not reweigh conflicting evidence on appeal and gives "due regard to the [superior] court's opportunity to judge the credibility of the witnesses." *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009). Further, even if conflicting evidence may exist, this court will affirm the superior court's ruling "if substantial evidence supports it," *id.* (citation omitted), construing the record in a light most favorable to upholding the ruling, *see Michaelson*, 234 Ariz. at 544 ¶ 5 (citing cases).

¶20            The record provided supports the superior court's ruling. The court weighed and assessed the evidence and continued the order of protection because it was "clear that harassing behaviors [were] taking place," *see, e.g.*, A.R.S. § 13-2921(A), and if the order of protection was not kept in place, "additional acts of domestic violence [would] occur." This finding was based not only on the testimony from the parties but also the exhibits received, including the "amount of videos that were submitted" that "in fact, do show stalking behaviors." *See, e.g.*, A.R.S. § 13-2923(A). The court also found that, even though Parsons claimed Calbert was giving her previous partner access to A.B., "there was not a single video" that showed A.B. in the presence of Calbert's previous partner. On this record, Parsons has not shown that the superior court abused its discretion by granting and continuing Calbert's requested order of protection. *See Savord*, 235 Ariz. at 259 ¶ 10.

### C.        Alleged Procedural Irregularities.

¶21            Parsons asserts there were procedural irregularities between his order of protection and Calbert's order of protection. This argument appears to be based on the fact that the initial judge assigned to Calbert's petition issued the order ex parte the day it was filed, while the initial judge assigned to Parsons' petition (a different judge) did not rule on the petition and, instead, set it for the hearing held on April 7, 2025. Parsons accurately sets out the procedural history of these matters between the late March 2025 filing and the hearing on April 7, 2025. But he does not show how those differences had any impact on the court's findings at the end of the April 7, 2025 evidentiary hearing.

¶22            If "opposing parties file separate petitions for protective orders, the judicial officer may: (1) hear each petition at separate *ex parte* hearings, or (2) set a joint hearing on both cases." Ariz. R. Prot. Order P. 27(b); *see also* A.R.S. § 13-3602(H) (If opposing parties have filed separate orders of protection, "the courts after consultation between the judges involved may consolidate the petitions of the opposing parties for hearing. This does not prohibit a court from issuing cross orders of protection."). Parsons apparently requested an evidentiary hearing on Calbert's petition after being served with the ex parte protective order, as was his right. *See* A.R.S. §13-3602(L) ("a party who is under an order of protection or who is restrained from contacting the other party is entitled to one hearing on written request"). The superior court here followed these procedures by setting a joint hearing on both cases for April 7, 2025. On this record, Parsons has shown no reversible error.

## CONCLUSION

**¶23**        The order of protection in favor of Calbert and against Parsons is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR